Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 1 C 1316 | **DATE** | 12/4/2001 |
| **CASE TITLE** | Ileana Glazer vs. Abbott Laboratories, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **Enter MEMORANDUM, OPINION AND ORDER: Defendant's motion to dismiss [5-1] is denied.**

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | DEC 0 6 2001 | |
| | Notified counsel by telephone. | | date docketed | 17 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| TSA | courtroom deputy's initials | 01 DEC -4 PM 4:26 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
DEC 0 6 2001

| | |
|---|---|
| ILEANA GLAZER, | ) |
| Plaintiff, | ) Case No. 01 C 1316 |
| v. | ) Judge Wayne R. Andersen |
| ABBOTT LABORATORIES, INC., | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

This case is before the Court on the defendant Abbott Laboratories' motion to dismiss Count VI of the plaintiff's complaint for failure to state a claim upon which relief can be granted or alternatively to dismiss Count VI because it fails to satisfy the particularity requirement of Federal Rule of Civil Procedure 9(b). For the following reasons, the defendant's motion is denied.

## BACKGROUND

The following factual background is taken from the civil complaint filed in this Court, which, for purposes of this opinion, we assume to be true. Plaintiff Illeana Glazer is a 31-year old woman who currently resides in the state of New Jersey. On or about April 2000, Glazer was given a pregnancy test as part of a pre-hospital admission examination. The test that was administered to Glazer was manufactured and distributed by the defendant Abbott Laboratories, Inc. ("Abbott"). Generally, the test kits manufactured by Abbott are used as a diagnostic tool to detect the presence of a hormone called human chorionic gonadotropin (hCG). Doctors test women for pregnancy by ordering an analysis of their hCG levels. If a patient is pregnant, hCG levels should be elevated, remain elevated and increase during the pregnancy. However, an elevated hCG level in the absence



of any other sign of pregnancy is an indicator of potentially very serious conditions, including ectopic pregnancy or a deadly form of cancer called trophoblastic disease. The normal course of treatment for trophoblastic disease is a vigorous regimen of chemotherapy.

When Glazer was given the pregnancy test manufactured by Abbott in April 2000, it generated a positive result. However, the doctors determined that Glazer was not pregnant and they assumed she had had a spontaneous abortion. In July 2000, Glazer's hCG levels were again tested with an Abbott test kit in conjunction with a second outpatient procedure. The test indicated that Glazer's hCG levels remained elevated. Shortly thereafter, her doctors diagnosed Glazer with an ectopic pregnancy and they gave her two injections of a chemotherapy agent called methotrexate. The medicine failed to reduce Glazer's hCG levels and the doctors were forced to assume she was unresponsive to the treatment regimen. Subsequently, Glazer was referred to a gynecologic oncologist for evaluation because of the possibility of gestational trophoblast disease allegedly indicated by the results from the Abbott test kits. This oncologist diagnosed the plaintiff as having a cancerous tumor. Extensive diagnostic tests were then performed on Glazer, including CT scans of the abdomen, pelvis, and chest and a MRI of the central nervous system. All of these examinations were negative to the presence of cancer in her body.

Faced with conflicting test results (i.e. the Abbott test pack which indicated that Glazer had cancer and the diagnostic tests which indicated she did not have cancer), Glazer was referred to Laurence Cole, Ph.D. who requested that she submit a serum sample for analysis. Dr. Cole concluded that Glazer's positive hCG results were false and that, in fact, she did not have cancer. Glazer's chemotherapy and other cancer related treatments were discontinued shortly thereafter.

On February 27, 2001, Glazer filed the instant eight count complaint against Abbott. The gist of the plaintiff's complaint is that, as a direct result of Abbott's allegedly defective test kits, all of the plaintiff's diagnoses of ectopic pregnancy and trophoblast disease were false and her painful chemotherapy treatments were unnecessary. Specifically, Glazer has alleged claims of strict liability, negligence, failure to warn, breach of implied warranty, breach of implied warranty of fitness for a particular use, violation of the New Jersey Consumer Fraud Act (the subject of the instant motion to dismiss), and intentional or negligent infliction of emotional distress.

## DISCUSSION

In considering defendant's motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all allegations set forth in the complaint and draw all reasonable inferences in favor of Glazer. *See Lachmund v. ADM Investor Services, Inc.*, 191 F.3d 777, 782 (7th Cir. 1999). A motion to dismiss, pursuant to Rule 12(b)(6), will only be granted if it appears that Glazer could not prove any set of facts in support of her claims entitling her to relief. *See Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001); *see also Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99 (1957).

In Count VI of her complaint, Glazer alleges Abbott engaged in misrepresentations and/or omissions of material fact regarding the accuracy and reliability of the hCG test kits that it manufactured and distributed. Additionally, Glazer contends that Abbott did not disclose to the medical community information it possessed concerning an available commercial fix which would have eliminated the possibility of false positive hCG levels reported by the Abbott test kits. All of these actions allegedly are violations of the New Jersey Consumer Fraud Act (the "NJCFA"), N.J. Stat. § 56:8-1 *et seq.* On the other hand, the defendant argues that Glazer has failed to state a NJCFA

claim for two reasons. First, Abbot contends that the sale of its test packs to hospitals and laboratories and then indirectly to her is not a sale of "merchandise" contemplated by the NJCFA. Second, defendant argues that Glazer has failed to satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).

I.  **Applicability of the New Jersey Consumer Fraud Act**

The NJCFA protects consumers against "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale . . . of any merchandise . . . ." N.J. Stat. § 56:8-2. Glazer alleges that Abbott's actions in connection with the manufacture and distribution of the hCG test kits constitute unlawful and unconscionable commercial practices in violation of Section 8-2 of the NJCFA. The Act is worded in the disjunctive and requires only that Glazer prove that the defendant committed one of the prohibited practices to sustain its claim. *See Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 19, 647 A.2d 454 (1994).

When determining whether the allegations of a complaint satisfy the essential elements of a statute, the logical place to begin the analysis is with the text of the statute itself. The NJCFA defines "merchandise" to include "any objects, wares, goods, commodities, services, or anything offered, directly or indirectly to the public for sale." N.J. Stat. § 56:8-1(c). A "person" under the Act includes "any natural person or his legal representative, partnership, corporation, company, business entity or association." N.J. Stat. § 56:8-1(d). Any "person" who "suffers any ascertainably loss of moneys or property, real of personal," as a result of one of the practices forbidden under the statute, may bring an action under the NJCFA. N.J. Stat. § 56:8-19.

While acknowledging the language of the NJCFA, Abbott would like this Court to heed the admonition of New Jersey courts that the judiciary must "place reasonable limits upon the operation of the [NJCFA] 'despite broad statutory language, so that its enforcement properly reflects legislative intent . . . .'" *DiBernardo v. Mosley*, 206 N.J.Super. 371, 375, 502 A.2d 1166 (App. Div.1986) (quoting *Jones v. Sportelli*, 206 N.J.Super 383, 388, 399 A.2d 1047 (Law Div. 1979)). As the Appellate Division of the New Jersey Superior Court has stated, "it is our considered opinion that the entire thrust of the Consumer Fraud Act is pointed to products and services sold to consumers in the popular sense." *Neveroski v. Blair*, 141 N.J.Super. 365, 378, 358 A.2d 473 (App. Div. 1976). Other cases suggest that this "popular sense" of consumer transactions "encompasses mass produced items available to multiple customers." *R.J. Longo Constr. Co., Inc. v. Transit America, Inc.*, 921 F. Supp. 1295, 1311 (D.N.J. 1996).

Assuming all the facts in her complaint are true and drawing all reasonable inferences in her favor, we conclude that, at this stage in the proceeding, Glazer's complaint states a claim under the NJCFA. The "merchandise" at issue in this case is the hCG test kits which Abbott distributed to a finite number of hospitals and laboratories. However, the NJCFA places no identifiable restriction as to whom the items must be sold in order to be considered "merchandise" under the statute. The plain language of the statute states that merchandise includes "any objects, wares, goods, commodities, services or anything offered directly or *indirectly* to the public for sale." N.J. Stat. § 56:8-1(c) (emphasis added). Thus, because the hCG test kits produced by Abbott have been offered for sale to the public at large, even if that public is a finite group of hospitals and laboratories, Glazer's claims must survive the motion to dismiss. *See Naporano Iron & Metal Co. v. American Crane Corp.*, 79 F. Supp. 2d 494, 509 (D.N.J. 2000) (sale of commercial cranes, though advertised

to limited number of potential purchasers, was found to be "merchandise" within the purview of the NJCFA). Nevertheless, we would like to note at this juncture that this is a close call. We anticipate reviewing the results of the forthcoming discovery on issues such as whether Glazer is in fact a consumer of these tests kits and the extent of any reliance she placed on alleged misrepresentations made by Abbott regarding the nature or accuracy of its test kits.

## II. Federal Rule of Civil Procedure 9(b)

Abbott next argues that Glazer's NJCFA claim must be dismissed for failing to comply with the pleading requirements of Fed.R.Civ.P. 9(b). Rule 9(b) of the Federal Rules of Civil Procedure requires that "in all averments of fraud or mistake, the circumstances must be stated with particularity." The defendant contends that Glazer's allegations are impermissibly vague and thus violate the Rule. Glazer's response is two-fold. First, she contends that the allegations contained in Count VI do not "sound in fraud," and thus the heightened pleading burden of Rule 9(b) does not apply. Second, she argues that, assuming that Rule 9(b) does apply, she has satisfied the Rule in her complaint. The Court will address each of these arguments in turn.

As an initial matter, Count VI of Glazer's complaint alleges that Abbott engaged in unlawful and unconscionable commercial practices and that Abbott misrepresented and omitted material facts concerning the accuracy of its hCG test kits, the possibility that its test kits would generate false positive results, and the availability of a commercial fix which would have eliminated the possibility of false positive hCG levels. Therefore, contrary to the position in her briefs, Glazer's allegations of misrepresentation and deliberate omission of material fact do indeed "sound in fraud." *See Naporano Iron & Metal*, 79 F. Supp. 2d at 510.

Additionally, though Glazer has argued otherwise, we have been able to locate at least two cases in which the District Court for the District of New Jersey has held that claims brought pursuant to the NJCFA are subject to the particularity requirements imposed by Rule 9(b). *See id.*; *F.D.I.C. v. Bathgate*, 1993 WL 661961, at *2 (D.N.J. July 19, 1993), *aff'd* 27 F.3d 850 (3d Cir. 1994). Accordingly, we find that the allegations of Count VI are subject to the heightened pleading requirements of Rule 9(b).

Having determined that Rule 9(b) applies, we next must decide if Glazer's allegations comport with the requirements of the Rule. Under Rule 9(b), a plaintiff must plead with specificity the who, what, where, and when of the alleged fraud. *See Ackerman v. Northwestern Mut. Life Ins. Co*, 172 F.3d 467, 469 (7th Cir. 1999); *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 778 (7th Cir. 1994). The purpose of the heightened pleading requirement in fraud cases is to force the plaintiff to do more than the usual investigation before filing her complaint. *See Ackerman*, 172 F.3d at 469.

It is apparent from the face of the plaintiff's complaint that she has satisfied the heightened pleading requirements imposed by Rule 9(b). Specifically, the allegations of Count VI are quite clear the defendant allegedly misrepresented the accuracy of its hCG test kits and that the defendant allegedly failed to reveal the availability of the commercial fix which would have corrected the purported problem. As for the "when" allegations, Glazer contends that the period of fraud ran "from at least 1994 through the date of Plaintiff's false positive results and beyond." While the defendant disparages this allegation as too vague to satisfy the 9(b) requirements, we disagree. We are not troubled by the fact that Glazer has alleged a long time frame. The extended period of time during which she claims the fraud and unconscionable trade practices took place is consistent with

the conduct she contends was violative of the NJCFA. Therefore, we find that the allegations contained in Count VI of Glazer's complaint are pled with sufficient particularity to give Abbott adequate information to prepare its defense against the suit. In addition, the allegations provide evidence that Glazer has performed "more than the usual investigation before filing [her] complaint." The motion to dismiss is denied.

## CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss Count VI of the plaintiff's complaint for failure to state a claim upon which relief can be granted is denied. Further, defendant's motion to dismiss Count VI of the plaintiff's complaint for failure to satisfy the heightened pleading requirements of Rule 9(b) is also denied.

It is so ordered.

*Wayne R. Andersen*
United States District Judge

Dated: December 4, 2001